UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MANNIX D. CHEERS**,                    Case Number 1:12 CV 2728

    Plaintiff,                         Judge Benita Y. Pearson

    v.                                 REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.                         Magistrate Judge James R. Knepp II

## INTRODUCTION

Plaintiff Mannix D. Cheers seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405 (g) and § 1383 (c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2 (b)(1). (Non-document entry dated October 31, 2012). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for disability income benefits (DIB) and supplemental security income (SSI) on August 26, 2008. (Tr. 66, 188). His claims were denied initially and on reconsideration. (Tr. 70, 73, 83, 90). Plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. 97). At the hearing Plaintiff, represented by counsel, and a vocational expert (VE) testified. (Tr. 21). On April 1, 2011, the ALJ concluded Plaintiff was not disabled. (Tr. 21). Plaintiff's request for appeal was denied, making the decision of the ALJ the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 1481. On October 31, 2012,

Plaintiff filed the instant case. (Doc. 1).

FACTUAL BACKGROUND

*Plaintiff's Background, Vocational Experience, and Daily Activities*

Plaintiff was 37 years old at the time of his alleged disability onset date, May 16, 2008. (Tr. 70). Plaintiff attended school up to the twelfth grade but he did not graduate or earn a GED, although he has attended GED classes. (Tr. 44, 314). Previously, he worked as a merchandise displayer, filling machine operator, auto assembler, and auto detailer. (Tr. 28).

At the hearing, Plaintiff said he could not work due to complications from a gunshot wound near the bottom of his spine and depression. (Tr. 46-47, 53, 312). Plaintiff testified his medications made it difficult to concentrate and gave him nightmares and night sweats. (Tr. 51-53).

With regard to daily activity, Plaintiff took care of his disabled mother, cleaned, cooked, vacuumed, washed dishes, drove a car, and shopped for groceries. (Tr. 313, 316-17). As for hobbies, Plaintiff enjoyed playing chess on his computer, reading, and practicing martial arts, although his injury restricted the latter activity. (Tr. 314, 375). Plaintiff reported he had good interpersonal relationships with his girlfriend, cousin, and karate coach. (Tr. 375, 377). Plaintiff admitted to drinking alcohol and smoking two to three marijuana joints per day. (Tr. 275-76, 317, 351). However, at the hearing, Plaintiff claimed he had recently stopped drinking. (Tr. 58, 302).

*Physical Medical Evidence*

On May 16, 2008, Plaintiff went to the Community Regional Medical Center Emergency Department for a gunshot wound to his lower left abdomen. (Tr. 243-51). Evaluation of the injury revealed the bullet was overlying Plaintiff's L3-L4 disc space. (Tr. 257). His discharge

2

paperwork indicated his pain was controlled with minimal pain medications and he was able to ambulate easily. (Tr. 261). Although the bullet remained inside of Plaintiff, there was no evidence of a bowel injury and his kidney was intact. (Tr. 288-89).

Several months after the injury, on October 22, 2008, Domingo Gonzalez, M.D. examined Plaintiff, who complained of pain in his left flank radiating to his lower extremity. (Tr. 302). Plaintiff reported his pain was worst in the morning and occasionally improved as the day went on. (Tr. 302). Plaintiff indicated he was taking pain medication and anti-depressants. (Tr. 302). He denied any decrease in sensation or muscle weakness. (Tr. 302).

On examination, Plaintiff experienced pain during motion of the spine on flexion and hyperextension, straight leg raising, flexion, abduction, and rotation of both hips, and reverse leg raising. (Tr. 303). Plaintiff could stand on his toes and heels without difficulty, his coordination was normal, and there was no evidence of atrophy or abnormal strength in his extremities. (Tr. 302-03). Dr. Gonzalez ordered an x-ray to see if the bullet had moved from its original position and an EMG of his lower extremities to check for nerve irritation. (Tr. 303). The x-ray taken January 22, 2009 revealed a bullet fragment but there was no evidence of scoliosis, compression fractures, or dislocations. (Tr. 312).

On January 16, 2009, Mehdi Saghafi, M.D. performed a consultative physical examination on behalf of the Bureau of Disability Determination. (Tr. 306). Dr. Saghafi noted Plaintiff walked with a normal gait, could stand and walk on his toes and heels, and had no muscle spasms in his back or neck. (Tr. 306). He indicated Plaintiff felt some tenderness in his left lower back at the site of the bullet entry. (Tr. 306). Dr. Saghafi concluded Plaintiff was able to sit, stand, and walk six-to-eight hours per day, lift and carry 40 pounds frequently and 41-100 pounds occasionally. (Tr. 307). Further, Dr. Saghafi reported Plaintiff could push, pull, and

3

manipulate objects, drive a motor vehicle, travel, and climb stairs. (Tr. 307). Plaintiff's speech, hearing, memory, orientation, and attention were all within normal range. (Tr. 307).

On November 12, 2010, Plaintiff saw Norman A. Floro, M.D., after approximately fifteen visits to a chiropractor. (Tr. 388). Plaintiff told Dr. Floro the chiropractor had been very helpful with reducing pain in his back and legs. (Tr. 388). Plaintiff had tenderness in his left flank, but he had no muscle atrophy, intact sensation, and a non-antalgic gait. (Tr. 388). Dr. Floro noted Plaintiff's muscle strength was reduced on flexion of his left knee but he had full muscle strength on extension. (Tr. 388). Dr. Floro prescribed pain medication and referred him to physical therapy. (Tr. 388).

On February 15, 2011, Plaintiff returned to Dr. Floro with complaints of pain in his left lower back radiating into his left lower extremity. (Tr. 386). Plaintiff said he continued to experience discomfort in his lower back and extremities. (Tr. 386). Plaintiff admitted to recreational marijuana use. (Tr. 386). Dr. Floro noted Plaintiff appeared pleasant and was not in any distress. (Tr. 386). Plaintiff exhibited weakness with extension at the left knee, but he was able to dorsiflex his left foot against active resistance and had a non-antalgic gait. (Tr. 386). Plaintiff was advised to continue with his medication and physical therapy regimens. (Tr. 386).

On December 2, 2010, Plaintiff began physical therapy at Rehabilitation Consultants with the goal of increasing strength, improving function, and decreasing pain. (Tr. 363). Plaintiff complained of lower back pain on rotation, and while in the sitting, static or dynamic positions; difficulty bending, lifting, squatting, or reaching overhead; shooting pain from his left leg down to his left foot with all dynamic activities; decreased sleep; and the inability to perform daily functional or work activities without pain. (Tr. 364). Plaintiff had a slight antalgic gait, decreased heel strike, and dorsiflexion on his left side. (Tr. 365). He had decreased flexibility in his

thoracolumbosacral paraspinals, hip external rotators, gastroc-soleus, and hip adductors. (Tr. 365). Treatment notes indicated Plaintiff had an active lifestyle and his rehabilitation potential was good. (Tr. 366). Plaintiff was advised to follow–up and perform home exercises. (Tr. 366).

The remainder of Plaintiff's physical therapy sessions was generally unremarkable. (Tr. 367-69). While Plaintiff did exhibit soreness and stiffness on occasion, he was able to supplement his physical therapy treatments with workouts in his home gym and continued to progress as tolerated. (Tr. 367-69).

***Mental Medical Evidence***

On September 4, 2008, Plaintiff saw Byong J. Ahn, M.D. for depression and anger related issues. (Tr. 275). Plaintiff reported he had trouble controlling his temper, sleeping, and coping with animosity toward the justice system. (Tr. 275). Plaintiff admitted to using marijuana and alcohol and said he felt paranoid that people were following him. (Tr. 275-76). Plaintiff reported he lived with his mother, who suffered from fibromyalgia. (Tr. 275).

Plaintiff's affect was generally appropriate, although a little tense, and his appearance was clean and neat. (Tr. 276). Dr. Ahn assessed a Global Assessment of Functioning (GAF) score of 40.[1] (Tr. 276). He prescribed Zonegran and Celexa for possible major depression, recurrent, and ruled out bipolar affective disorders. (Tr. 276).

For nearly two years, Plaintiff regularly followed up with Dr. Ahn. (Tr. 346-351; 370-

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score between 31 and 40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id*. at 34.

74). Toward the beginning of his course of treatment, Plaintiff experienced side effects from his medications, including night sweats, nightmares, and hallucinations. (Tr. 349, 351). However, these side effects diminished significantly over time as Plaintiff began consistently taking his medication. (Tr. 346-48, 371-74). Eventually, Plaintiff did not report any side effects and Dr. Ahn indicated Plaintiff's medications worked well. (Tr. 346-48, 371-74). Plaintiff feared the man who shot him would come after him again, and occasionally reported pain in his back. (Tr. 348, 351, 373). He admitted to heavy drinking, though he claimed he stopped drinking after the death of his cousin. (Tr. 347, 351). He also reported family related stress, principally related to taking care of his mother, the death of his cousin, and a troubled daughter. (Tr. 346, 347, 351, 371, 374).

On April 13, 2010, Plaintiff visited Thomas Haglund, PhD., a psychologist at the Nord Center. (Tr. 382). He told Dr. Haglund he was shot while trying to remove his daughter from a bad situation. (Tr. 382). Plaintiff said he sought counseling to help him work through the emotional aftermath of that incident. (Tr. 382). On at least one occasion, Plaintiff reported his medications made him feel better. (Tr. 279). He generally reported stress related to his back pain, his daughter's behavior, and taking care of his mother. (Tr. 381, 375, 377). He reported positive relationships with his girlfriend, karate coach, and cousin. (Tr. 375, 377).

On January 26, 2009, psychologist Ronald G. Smith, Ph.D. examined Plaintiff. (Tr. 313). With respect to daily activity, Plaintiff indicated he drove occasionally, but tried to avoid it. (Tr. 313). He drove his mother to work or the grocery store and helped her around the house by cooking, cleaning and vacuuming, doing the dishes, and cleaning the bathroom. (Tr. 313, 316) He also made sure his grandmother got her medications. (Tr. 316). Plaintiff expressed having suicidal thoughts, crying often, and suffering from feelings of depression and anxiety. (Tr. 315).

6

Plaintiff also indicated he did not get more than four hours of sleep because he had nightmares almost every night. (Tr. 317).

Dr. Smith concluded Plaintiff would be moderately impaired in his ability to relate to others, including fellow workers, supervisors, and the general public because he is hyper alert and suspicious of others. (Tr. 318). He also concluded Plaintiff would be mildly impaired in his mental ability to understand, remember, and follow instructions, and moderately impaired in his abilities to maintain attention, concentration, and persistence while performing routine tasks, and withstand the stress and pressure of day-to-day work activity. (Tr. 318). He would need assistance handling funds due to chronic marijuana use and unstable sobriety. (Tr. 318). Dr. Smith assigned Plaintiff a GAF score of 52[2] and diagnosed him with post-traumatic stress disorder (PTSD), alcohol abuse, and cannabis dependence. (Tr. 317-18).

### State Agency Medical and Psychological Assessments

On March 27, 2009, W. Jerry McCloud, M.D. assessed Plaintiff's physical residual functioning capacity (RFC). (Tr. 338). Dr. McCloud determined Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand or walk with normal breaks for a total of six hours in an eight-hour work day, sit for a total of six hours in an eight-hour work-day, and push and/or pull without limitation. (Tr. 339). Dr. McCloud observed Plaintiff had a normal gait, no motor or sensory deficits in his upper or lower extremities, a normal range of motion in all joints, and some tenderness at the side of the gunshot wound. (Tr. 339). Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 340-42).  On October 5,

---

2. A GAF score of 51-60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *DSM-IV-TR,* at 34.

2009, Gerald Klyop, M.D. reviewed Plaintiff's file and affirmed the March 27, 2009 assessment, as written. (Tr. 361).

On February 11, 2009, non-examining state agency psychologist Kristen Haskins, Psy.D. reviewed Plaintiff's records. (Tr. 320-33). She concluded he was moderately limited in his ability to maintain attention and concentration for extended periods, complete a normal work day and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, relate to others and withstand the stress and pressures of daily work activity, and interact appropriately with the general public. (Tr. 320-21). Dr. Haskins specifically found Plaintiff could perform simple, routine tasks which did not require public contact or have strict time/production demands. (Tr. 322). She noted Plaintiff's medications were effective but found Plaintiff had the medically determinable impairments of PTSD, alcohol abuse, and cannabis dependence. (Tr. 322, 329, 332). Dr. Haskins indicated these impairments had a mild degree of limitation on his daily activities and a moderate degree of limitation concerning social functioning, and maintaining concentration, persistence, or pace, but no episodes of decompensation. (Tr. 334).

On September 1, 2009, Robyn Hoffman, Ph.D. analyzed Plaintiff's application on reconsideration. (Tr. 360). She reported no change in Plaintiff's condition and affirmed Dr. Haskins' February 11, 2009 assessment. (Tr. 360).

***VE's Testimony and the ALJ's Decision***

At the hearing, the ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience, who was able to perform light work that involved occasional overhead reaching, superficial interaction with the public, and only simple, routine tasks with no high production standards or quotas. (Tr. 61-62). The VE opined that such an individual could

8

perform work as a housekeeper/cleaner, fast food worker, auto dealer, car washer, and cashier. (Tr. 61-63).

The ALJ determined Plaintiff suffered from the following severe impairments: a gunshot wound to the lower back, without surgical removal of the bullet; PTSD; major depression, recurrent; alcohol abuse; and cannabis dependence. (Tr. 26). The ALJ concluded Plaintiff had a mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. (Tr. 27). The ALJ found Plaintiff had the RFC to perform a limited range of light work, restricted to simple, routine tasks with no high production standards or quotas and interaction with others on a superficial basis. (Tr. 28).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

9

**STANDARD FOR DISABILITY**

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?
2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is claimant's RFC and can he perform past relevant work?
5. Can the claimant do any other work considering his RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only determined to be disabled if he satisfies each element of the analysis, including inability to do other work, and meets the duration requirements. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

10

**DISCUSSION**

Plaintiff argues the ALJ's RFC assessment failed to account for restrictions provided by Drs. Haskins and Hoffman. He also argues the ALJ erred in assessing the opinions of Dr. Smith and treating physician Dr. Ahn. Further, he claims the ALJ's hypothetical posed to the VE did not accurately convey Plaintiff's concentration, persistence, and pace limitations. Finally, Plaintiff claims the ALJ erred because she did not question whether the VE's testimony was consistent with the Dictionary of Occupational Titles (*DOT*). (Doc. 13, at 1).  Each of Plaintiff's arguments is addressed below.

***RFC Assessment***

Plaintiff claims the ALJ erred by not adequately accounting for the opinions of Drs. Haskins and Hoffman in the RFC assessment.

A claimant's RFC is an assessment of "the most he can still do despite his limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.*, at § 416.929. An ALJ must also consider and weigh medical opinions. *Id.*, at § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on consideration of the entire record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1. The Court may not "try the case de novo, nor resolve conflicts in evidence". *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, Plaintiff argues the ALJ improperly omitted the opinions of Drs. Hasksins and Hoffman from the RFC finding. (Doc. 13, at 3). In particular, Plaintiff points to the ALJ giving

11

"significant weight" to the opinions of Drs. Haskins and Hoffman, specifically their finding that Plaintiff "could perform simple routine tasks that do not require public contact and strict time/production demands". (Tr. 30). However, the ALJ's RFC assessment concluded Plaintiff can "interact with others on a superficial basis" and restricted Plaintiff to routine tasks without high production standards or quotas. (Tr. 28). Plaintiff claims this discrepancy is reversible error. The fact that the ALJ gave significant weight to, but did not adopt verbatim, the opinions of Drs. Haskins and Hoffman does not automatically indicate the ALJ's RFC determination is not supported by substantial evidence.

There is a difference between medical opinions and an RFC finding. The ALJ, not a medical source, is tasked with making the latter determination. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."). The two assessments are not synonymous, and need not be identical to be compatible. SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment.").

Therefore, the ALJ was under no obligation to transcribe all of Drs. Haskins and Hoffman's opinions into Plaintiff's RFC assessment. Moreover, the ALJ adequately accounted for Plaintiff's limitations in social functioning.  The record does not suggest Plaintiff was limited in his ability to interact with the public or coworkers above and beyond superficial interaction. In fact, Plaintiff reported positive relationships with his girlfriend, karate coach, and cousin. (Tr.

12

377, 375). Plaintiff's daily living activities included playing chess, grocery shopping, cleaning, and caring for his mother. (Tr. 313, 314, 316-17, 375, 377, 379). Additionally, Plaintiff testified he had never had trouble getting along with others, but "probably" did because of his depression. (Tr. 30, 54). Based on the relevant record, substantial evidence supports the ALJ's RFC determination with respect to Plaintiff's assessed limitations in social functioning.

The ALJ also adequately accounted for Plaintiff's assessed limitations concerning concentration, persistence, and pace. To this end, the ALJ precluded Plaintiff from work with high production standards or quotas. This determination is supported by the fact Plaintiff had taken GED classes and his mental issues were generally stable with medication. (Tr. 379, 347, 371, 372, 373, 374, 314). Accordingly, substantial evidence supports the ALJ's RFC determination.

### Treating Physician Rule

Plaintiff argues the ALJ improperly explained her reasons for affording Dr. Ahn limited weight and Dr. Smith limited weight. This argument raises the treating physician rule.

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. §

13

416.927(d)(2)).

A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. *Rabbers v. Comm'r Soc. Sec. Admin*., 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*.

Importantly, the ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id*. "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (*quoting* SSR 96-2p, 1996 WL 374188, at *4). "Good reasons" are required even when the conclusion of the ALJ may be justified based on the record as a whole. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004). A failure to follow this procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. (*citing Rogers*, 486 F.3d at 243). Accordingly, failure to give good reasons requires remand. *Id*. at 409–410.

Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. §

14

404.1502. A medical provider is *not* considered a treating source if the claimant's relationship with him or her is based solely on the claimant's need to obtain a report in support of their claim for disability. 20 C.F.R. § 404.1502. Non-treating sources are physicians, psychologists, or other acceptable medical sources who have examined the claimant but do not have, or did not have, an ongoing treatment relationship with them. 20 C.F.R. § 404.1502. This includes a consultative examiner. 20 C.F.R. § 404.1502.

Last in the medical source hierarchy are non-examining sources. These are physicians, psychologists, or other acceptable medical sources who have not examined the claimant, but review medical evidence and provide an opinion. 20 C.F.R. § 404.1502. This includes state agency physicians and psychologists. 20 C.F.R. § 404.1502. The ALJ "must consider findings and other opinions of [s]tate agency medical and psychological consultants . . . as opinion evidence", except for the ultimate determination about whether the individual is disabled. 20 C.F.R. § 404.1527(e)(2)(ii).

Treating Physician Dr. Ahn

Plaintiff argues the reasons given by the ALJ for discounting Dr. Ahn's GAF score are not "good reasons". (Doc. 13, at 8).  However, the ALJ did indeed provide good reasons to discount Dr. Ahn's GAF score because she touched upon several factors an ALJ is required to consider under 20 C.F.R. § 404.1527(d).

First, the ALJ reported that the GAF score is inconsistent with the record as a whole and with Dr. Ahn's own treatment records. (Tr. 31). The ALJ specifically pointed to inconsistencies with the GAF score and Plaintiff's reported daily living activities, improvement in symptoms,

and lack of reported trouble getting along with others. (Tr. 30). The ALJ also pointed to Dr. Ahn's specialization and course of treatment, noting many of Plaintiff's complaints related to situational family matters rather than psychopathology. (Tr. 31). Finally, the ALJ acknowledged the length of treatment relationship. (Tr. 30). Therefore, the ALJ provided several "good reasons" for affording Dr. Ahn's opinion limited weight, which is all that is required under the regulations. § 404.1527(d).

Dr. Smith

Plaintiff also argues the ALJ improperly and without adequate explanation, rejected[3] state examiner Dr. Smith's opinion that the claimant was limited in performing even routine tasks and handling the stress of day-to-day work activity. (Doc. 13, at 5). Plaintiff divides this objection into two parts.

In part one, Plaintiff claims the ALJ did not follow SSR 96-5p because he failed to evaluate Dr. Smith's "opinions" separately. (Doc. 13, at 5). Specifically, Plaintiff claims the ALJ should have separately discussed the portion of the opinion relating to routine tasks and day-to-day stress.  SSR 96-5p holds in relevant part:

> Adjudicators must remember that medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one.

SSR 96-5p, 1996 WL 374183, at *4.

---

3. Plaintiff claims the ALJ "rejected" the opinion of Dr. Smith. (Doc. 13, at 1). However, the ALJ did not "reject" Dr. Smith's opinion. The ALJ gave his opinion "limited weight." (Tr. 31).

16

Here, the ALJ expressly discussed Dr. Smith's "evidence regarding the claimant's mental impairments", which would include Plaintiff's ability to withstand the stress and pressure of day-to-day work activity. (Tr. 31). The Plaintiff does not suggest, and the undersigned does not find, a necessary reason for the ALJ to have discussed Dr. Smith's mental opinions separately.

Plaintiff also claims the ALJ violated SSR 96-8p by not adequately explaining the weight she afforded to Dr. Smith's opinion. SSR 96-8p provides, "if the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7.

However, the ALJ in fact gave good reasons for affording Dr. Smith's opinion limited weight. Dr. Smith is considered a non-treating source because he examined Plaintiff only once, and did so for purposes of providing a report for Plaintiff's disability claim. 20 C.F.R. § 404.1502; *see also* 20 C.F.R. § 404.1502. As a non-treating source, Dr. Smith's opinion is not entitled to controlling weight. Nevertheless, the opinions of one-time examining sources are weighted under the same factors as treating physicians "including supportability, consistency, and specialization." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp.2d 813, 823-24 (S.D. Ohio 2011).

Here, the ALJ gave limited weight to Dr. Smith's mental impairment findings because Dr. Smith failed to consider how the claimant's substance use affected his GAF score. (Tr. 31). In this regard, Dr. Smith found Plaintiff would need assistance handling any potentially awarded funds due to his chronic marijuana use and excessive consumption of alcohol. (Tr. 318). But, Dr. Smith did not opine as to how this substance abuse affected his other conclusions; specifically

17

his ability to concentrate and withstand the stress of day-to-day work activity. (Tr. 318). This, combined with the fact Dr. Smith examined Plaintiff once for purposes of obtaining a disability report, satisfies the regulations' "good reasons" requirement. *Douglas*, 832 F.Supp.2d at 823-24; 20 C.F.R. § 404.1527(d).

### The ALJ's Concentration, Persistence, and Pace Assessment

Plaintiff argues the ALJ's RFC assessment, and corresponding hypothetical questions to the VE, did not sufficiently address his mental limitations. (Doc. 13, at 7). However, Plaintiff's *Ealy* argument is without merit.

A VE's testimony given in response to a hypothetical question serves as substantial support for an ALJ's determination that the claimant can perform other work if the hypothetical accurately portrays a claimant's physical and mental impairments. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). In *Ealy*, the Sixth Circuit found the functional restrictions recited in an ALJ's hypothetical insufficient to accommodate the claimant's medically-established difficulties in concentration, persistence, and pace because the hypothetical omitted speed- and pace-based restrictions completely and instead only limited the individual to simple, repetitive tasks. *Id*. This prevented the VE's testimony from being substantial evidence to support the Commissioner's decision at step five.

Similarly, "[t]here is a body of case law supporting the proposition that hypotheticals limiting claimants to jobs entailing no more than simple, routine, and unskilled work are not adequate to convey moderate limitations in ability to concentrate, persist, and keep pace." *Johnson v. Astrue*, 2010 WL 5559542, at *8 (N.D. Ohio 2010); *see also Edwards v. Barnhart*,

383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled routine job.").

Here, the ALJ asked the VE to consider a hypothetical claimant who could perform only simple, routine tasks without high production quotas and only superficial interaction with others. (Tr. 61). Accordingly, the ALJ provided for "additional limitations" as required by *Ealy* and its progeny, *i.e.* limits on production quotas and interaction with others. Plaintiff has failed to explain why this particular case requires a more detailed hypothetical question to account for the assigned mental limitations. *See Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. 2010). Therefore, Plaintiff's *Ealy* argument is without merit.

### *The VE's Testimony and the DOT*

Plaintiff claims the ALJ committed reversible error when she failed to inquire whether the VE's testimony was consistent with the *DOT*. SSR 00-4p. The Commissioner concedes the ALJ failed to satisfy this duty but argues the error was harmless. (Doc. 14, at 14).

Occasionally, a VE's testimony conflicts with the information set forth in the *DOT*. "In an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration imposed an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided 'conflicts with [the] information provided in the *DOT*.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009) (quoting SSR 00-4p, 2000 WL 1898704, at *2). Additionally, the ALJ must "obtain a reasonable explanation for . . . apparent conflict[s]" if the VE's evidence "appears to conflict with the *DOT*." *Id*. Here, there is no dispute that the ALJ failed to inquire about conflicts between the VE's testimony and the *DOT*.

19

Nevertheless, disposition of this case depends on whether there is an actual conflict between the *DOT* and the VE testimony. If there is a conflict, the ALJ's error is grounds for remand. *Lancaster v. Comm'r of Sos. Sec.*, 228 Fed. Appx. 563, 575 (6th Cir. 2007). But, where there is no actual conflict between a VE's testimony and the *DOT*, courts in the Sixth Circuit "tend to hold that the technical error of failing to inquire does not constitute reversible error." *Bratton v. Astrue*, 2010 WL 2901856, at *4 (M.D. Tenn. 2010) (citing *Wix v. Astrue*, 2010 WL 520565, at *7 (M.D. Tenn. 2010); *Fleeks v. Comm'r of Soc. Sec.*, 2009 WL 2143768 (E.D. Mich. 2009); *McEwen v. Astrue*, 2009 WL 5196061, at *4 (M.D. Tenn. 2009)).

It is the Plaintiff's responsibility to identify such a conflict. Where the Plaintiff fails to demonstrate any actual conflict between the *DOT* and the VE testimony, the ALJ's error is harmless. *Prince v. Astrue*, 2011 WL 1124989 (S.D. Ohio 2011) *report and recommendation adopted*, 2011 WL 1124986 (S.D. Ohio 2011); *Beinlich v. Comm'r of Soc. Sec.*, 2009 WL 2877930, at *4 (6th Cir. 2009) (The "obligation to investigate the accuracy of the VE's testimony . . . falls to the plaintiff's counsel, who ha[s] the opportunity to cross-examine the VE and bring out any conflicts with the *DOT*".); *Brown v. Comm'r of Soc. Sec.*, 2009 WL 3614953, at *6-7 (N.D. Ohio 2009) (holding that the ALJ's error to request assurance from the VE pursuant to SSR 00-4p was harmless where the plaintiff failed to provide any evidence that the VE's testimony was inconsistent with the *DOT*).

Here, Plaintiff has not identified any actual conflict between the *DOT* and the VE's testimony. In his Merits Brief, Plaintiff summarily alleged, "[t]he ALJ did not fulfill her 'affirmative responsibility' under SSR 00-4p to ask the vocation expert whether her testimony

20

was consistent with the *DOT*." (Doc. 13, at 8). No further argument is made until his Reply Brief, wherein the Plaintiff argued the failure was "harmful" and claimed the Commissioner admitted to the existence of an actual conflict by only discussing one of three job positions. (Doc. 15, at 3-4).

Although the Commissioner declined to discuss two of the three jobs suggested by the VE, this does not result in a lack of substantial evidence to support the ALJ's conclusion at step five. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) (finding one job available in significant numbers is sufficient to satisfy the ALJ's burden at step five). Plaintiff correctly points out the ALJ failed to ask the VE if her testimony conflicted with the *DOT*. However, because Plaintiff failed to demonstrate an actual conflict exists, the ALJ's error is harmless. Accordingly, the undersigned finds the ALJ did not commit reversible error for failing to inquire about potential conflicts between the VE's testimony and the *DOT*.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB and SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

21

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).